IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID E. THOLE | ) |
| JOAN M. THOLE | ) |
| GAIL ANN BALCOM | ) |
| DARRIN J. BOSIN | ) |
| JOHN D. BROOKS | ) |
| JUAN ANTONIO MANRIQUE | ) |
| MARIA V. HUGHES | ) |
| CYNTHIA M. ANTHONY | ) |
| ALFRED ANTHONY | ) |
| MICHAEL W. BASS | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| THE ISLAMIC REPUBLIC OF IRAN | ) |
| c/o Ministry of Foreign Affairs, | ) |
| Imam Khomeini Avenue | ) |
| Imam Khomeini Square | ) |
| Tehran, Iran | ) |
| | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiffs bring this case against Defendant The Islamic Republic of Iran for damages arising out of the June 25, 1996, terrorist attack on the Khobar Towers complex in Dhahran, Saudi Arabia. On that day, Hizballah terrorists detonated a 5,000-pound truck bomb outside the

1

complex, which housed United States military personnel. The blast from this bomb sheared off the entire face of one building of the Khobar Towers complex and shattered windows up to a half mile away. The blast killed nineteen Air Force service persons and injured many others, some severely.

Plaintiffs here are six survivors of the attack, two of their immediate family members, and two immediate family members of another survivor of the attack, George Anthony, who has previously received a judgment and award from this Court They seek damages under the Foreign Sovereign Immunities Act, 28 U.S.C. Section 1605A(c), and under other applicable state and federal law, and move for judgment against Defendant The Islamic Republic of Iran. In support of their Complaint Plaintiffs allege as follows:

I.

## JURISDICTION and VENUE

1. This Court has jurisdiction over this matter and over Defendant pursuant to 28 U.S.C. Sections 1330-1332 and 1605A.

2. This District is the proper venue pursuant to 28 U.S.C. Section 1391(f)(4).

II.

## THE PARTIES

Plaintiffs

3. Plaintiff David E. Thole is a 1989 graduate of the United States Air Force Academy. He was and is a United States citizen and a resident of Ohio. He was serving in the Air Force as a captain and a flight instructor fighter pilot stationed in Dhahran, Saudi Arabia in June 1996.

He shared living quarters at the Khobar Towers residential complex with his wife, Joan M. Thole, also an officer in the United States Air Force at the time. On the evening of June 25, 1996, David Thole was sitting next to a sliding glass door in the day room of his apartment. His wife was further back in the room. Suddenly, he felt the earth shake, heard a loud noise, and saw and felt the glass door blow in. His first reaction was to run to his wife to see if she was ok. His main emotion that he can recall was a deep sense of dread that she might have been killed or badly injured, followed by tremendous relief when he saw her moving around. Only gradually did he realize that he was bleeding heavily from his neck. When he put his hand behind his ears, he felt pieces of glass sticking out. Once he made his way down the stairs, and received an initial medical evaluation, he was taken to a Saudi hospital nearby for emergency treatment. He was told that his blood pressure was very low and he was stitched up on the floor of the emergency room. He was subsequently evacuated on a flight to Landstuhl Germany. His major wound was a large gash in his neck, where a piece of flying glass had entered his body. He was told it narrowly missed his jugular vein, although it did result in some permanent nerve damage, which he still feels as a numbness or tingling in his neck. To this day he has a substantial scar there, and shows symptoms of PTSD, including an aversion to loud noises, avoidance of sitting next to a window, and an emphatically negative reaction to the sight of broken glass. He was awarded a Purple Heart.

4. Plaintiff Joan M. Thole is a 1989 graduate of the Air Force Academy and was serving as a Captain in the Air Force and a Target Intelligence Officer in June 1996. She was and is a United States citizen and a resident of Ohio. She was married to David Thole in 1992. She asked for and received an assignment to the US Air Force base in Dhahran Saudi Arabia so she could serve together with her husband when he was there. On June 25, 1996, she was also sitting in the

3

day room of the quarters she shared with her husband at the Khobar Towers residential complex but sitting farther back from the glass sliding door. She recalls the blast as though it unfolded in slow motion. She recalls seeing the glass door come into the room in many small pieces. Some of the glass hit her and became embedded in her body. Although she realized she was bleeding, it was not profusely, and her first thought was for her husband, who was coming towards her to make sure she was ok. She noticed that he was bleeding much more profusely from a deep gash in his neck, and she became very concerned for him. She strongly urged him to seek medical help quickly, which he did. She also received first aid for her cuts and wounds, which included cuts on her forehead, arms and legs from the flying glass. The most serious of these was a piece of glass that severed the tendons to the middle two fingers of her right hand. The day after the bombing she had surgery at the Saudi hospital to repair and re-attach the tendons to her fingers. She had to wear a cast on her arm for six weeks and attend physical therapy to regain use, strength, and flexibility in her right hand. She still has a three-inch scar on the back of her hand and some scarring on her face in the forehead area. To this day she still has pain in her right forearm from those injuries. On the evacuation flight taking her and her husband to Landstuhl Germany, she observed many others who were even more heavily injured, and this left deep emotional scars as well. She was awarded a Purple Heart.

5. Plaintiff Gail Ann Balcom is Joan Thole's sister. She was and is a United States citizen residing in Colorado. Although she is six years older than Joan, they became very close as Joan grew up. They had no other siblings and stayed in close touch even as they entered young adulthood. She remembers that on June 25, 1996, or soon thereafter, she received a phone call from their mother, who sounded very upset and concerned. Her mother told her that she had learned there had been a bombing at the Air Force base in Saudi Arabia where her sister Joan and

her brother-in-law David were stationed. Gail turned on the television and saw some horrific images of the devastation, but stopped watching quickly because it was too painful. Her mother said that she had heard nothing about either Joan or David. The silence continued for two or three days. Gail became increasingly concerned and worried. Not hearing anything was the worst part—she knew that her sister could be dead or severely injured. Finally she got another call from their mother, who said that Joan had called her to let her know that she and David, although hurt, were alive.

6. Plaintiff Juan Antonio Manrique was and is a United States citizen and a resident of Virginia. In 1996 he was a crew chief with the 58th Fighter Squadron originally serving at Eglin Air Force base, Florida. He arrived at the US Air Force Base in Dhahran on or about March 1996. On June 25, he was shaving in the bathroom of his quarters at the Khobar Towers when the blast hit. Although he was not hit by any flying glass that came through when the small bathroom window blew in, he was shaken and jarred by the blast, and felt an immediate apprehension of harm. He thought they were under attack. He went out of the bathroom and saw his roommate covered in blood. His chief master sergeant was just down the hallway and blood was squirting out of his neck. He helped him and others to evacuate down the stairs. He was even more shaken and disturbed by what he saw when he got outside. There were many wounded. There was a belief and fear that further attacks would be incoming. He remains psychologically scarred by the experience. He has a VA Total Disability rating of 90 percent and 50 percent disability rating for PTSD.

7. Plaintiff Maria V. Hughes is the mother of plaintiff Juan Manrique. She is and was at all relevant times a citizen of the United States. She resides in Texas. She remained close to her son Juan Manrique even after he enlisted in the Air Force and remembers visiting him at Eglin

5

Air Force base. She was at home when she first heard about the attack on the Khobar Towers. A neighbor called and asked if she had seen the news on tv. She turned on the tv and learned about the bombing. She became shaky and deeply disturbed. She knew that her son could have been killed. She went next door to her sister-in-law's house to seek some comfort and solace. It seemed to take forever before she got word from her son's fiancé at the time that he was ok. Even after she later heard from him personally, she wasn't sure she could believe him and worried that he might have been injured and was minimizing his injuries.

8. Plaintiff John D. Brooks is and was at all times a United States citizen. He currently is a resident of Florida. He enlisted in the Air Force straight out of High School. He had served some time assigned to the Dhahran Air Base in 1995, and he volunteered to go back again in 1996. He was an F-15 Avionics, Communication, Navigation, and Electronic Warfare Journeyman. On June 25, 1996, late in the evening, he traded shifts with another Airman so that his roommate at the Khobar Towers, Earl Catrett, Jr., could stay behind to pack all their gear in preparation for returning to the States. He was working at the Air Base a few miles from the explosion when the bomb blast hit. He felt the earth rumble and heard an enormous blast even inside the hangar where he was working. He felt an imminent sense of fear and apprehension. First, he thought that they were under attack and that the Air Base itself would be hit next. Second, when he went outside and saw the mushroom cloud over the Khobar Towers he immediately knew that many of his close friends and comrades had been hit and some may no longer be alive. In fact he later learned that his roommate Earl Catrett, Jr., had been killed in the blast. For weeks afterwards he saw Catrett's face in hallucinations, appearing to come out of the tv and appearing in dreams and nightmares. Other similar hallucinations haunted him for years. He felt that Catrett had died in his place because Catrett had volunteered to stay behind to pack

6

their gear. In 2018 he sought treatment for PTSD from the VA and received a positive diagnosis. However, he has continued to experience symptoms of PTSD, including difficulty with social and family relationships, anger management issues, fear and avoidance of loud noises, nightmares, and difficulty sleeping.

9. Plaintiff Darrin J. Bosin is and was at all relevant times a United States citizen. He is a resident of Florida. He was on his second rotation at the US Air Force Base in Dhahran in June 1996, and was getting ready to return back to Eglin Air Force Base along with the rest of his flight squadron.. He was a Senior Airman working with F-15 Avionics at the time. He was best friends with John Brooks and with Earl Catrett, Jr., who were informally his "second set of roommates" because he spent so much time with them in their quarters. When the blast hit he was working a night shift at a hangar at the Air Base a few miles away from the Khobar Towers residential quarters. The blast shook the ground and the building, and he felt an immediate apprehension of harm, fear, and uncertainty. He thought they were under SCUD missile attack and the next missile could hit the air base itself. His shift supervisor started to pass out rifles and it was ordered that they should prep the fighter jets for launch. He does not recall exactly when he went back to what was left of the Khobar Towers residential complex, but when he did he was horrified at the scale of the destruction. He saw blood everywhere inside the buildings strewn with broken glass. He helped with rescue efforts, assisted with the wounded, and was also assigned to the "casket detail" to load the bodies of the dead for return to the United States. He did not realize it at the time, but one of those caskets contained the remains of his good friend Earl Catrett, Jr. When he later learned that Mr. Catrett was one of the fatalities, he felt an overwhelming and intense sense of anger, loss, despair and guilt. He has had many difficulties since that time. He has sought and received treatment for PTSD, but still has pronounced

symptoms, including problems with social relationships, anger management, trust issues, nightmares, sleep problems, anxiety and survivors' guilt.

10. Cyntia M. Anthony is the sister of George Anthony, who was badly wounded in the attack and awarded damages by this Court in *Akins v. Islamic Republic of Iran*, 332 F. Supp.3d 1 (D.D.C. 2018). She is and was a United States citizen and resides in Louisiana. She is one year older than George and was always close to her younger brother, both when they were growing up and later in adult life. Whenever George had leave from his service in the Air Force he went home to visit their parents and Cynthia made sure to see him whenever he did. She remembers learning of the Khobar Towers attack while visiting her parents. It was a very emotional time because she remembers she had gone over to their house to tell them she was pregnant with her daughter. Their shared joy about the pregnancy quickly turned to grief and anxiety when they heard about the attack on the Khobar Towers. She was deeply worried about her brother George although she tried to comfort their parents. She believes it was over a full day later that they all learned that George, although wounded, had survived.

11. Plaintiff Alfred Anthony is the brother of George Anthony. (See paragraph 10 above). He was and is a United States citizen currently residing in Louisiana. He was always close to his younger brother George, and they maintained their close relationship as young adults even after George enlisted in the Air Force. He remembers that on or soon after June 25, 1996, he received a phone call from his dad telling him he needed to come back home because something was going on with his brother George. When he arrived home he learned about the bombing. He felt angry and distressed, and his alarm increased when he saw the images on television news of the destruction at the Khobar Towers, He was deeply concerned that his brother may have been killed. He was relieved eventually to learn that George had survived.

12. Plaintiff Michael W. Bass is a United States citizen born and resident in Texas. He enlisted in the Air Force straight out of High School in December 1990. He was stationed at Camp Zama Air Force Base in Japan in 1996 when he volunteered to serve at Dhahran, Saudi Arabia. He was a Senior Airman with responsibilities for maintaining and operating the Satellite Communications of the Air Base. He was performing those duties at the Air Base a few miles away from his residential quarters at the Khobar Towers on the evening of June 25, 1996. He remembers a huge blast so loud and so powerful that the wooden building he was working in rattled and moved. He felt an immediate apprehension of harm, believing that they were under attack and missiles could be incoming at the airbase itself. The communications equipment lost power temporarily, but he applied himself to restoring it and making sure it would keep running. When he did return to the Khobar Towers residential site, he could not believe the degree of devastation he saw there. He felt angry and upset, especially when he saw the blood on the walls and the floors of the neighboring buildings. He suffers from symptoms of PTSD, including feeling on edge and anxious; difficulties with relationships and trust issues; wanting to avoid loud noises or events where loud noises could occur; difficulty sleeping; shying away from certain vehicles that could contain a bomb; and always sitting facing the entrance of a restaurant or other public place.

Defendant

13. Defendant the Islamic Republic of Iran (hereinafter also referred to as "Iran"), is a foreign state that has been designated a state sponsor of international terrorism within the meaning of section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) and section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) and section 40 of the Arms Export Control Act, 22 U.S.C. § 2780, since January 19, 1984. The Islamic Republic of Iran

provides material support and resources to Hezbollah, a politico-paramilitary terrorist organization, by providing it with funding, direction and training for its terrorist activities.

14. The Islamic Republic of Iran has been found to be liable as a foreign state supporting international terrorism under the predecessor statute to 28 USC Section 1605A, 28 U.S.C. § 1605(a)(7), to victims of state sponsored terrorism for the acts and actions of defendant Hezbollah in cases before this Court, including *Anderson v. The Islamic Republic of Iran*, 90 F. Supp. 2d 107 (D.D.C. 2000) and *Cicippio v. The Islamic Republic of Iran*, 18 F. Supp. 2d 62 (D.D.C. 1998). Iran has also been found liable for the same terrorist attack of June 25, 1996, at the Khobar Towers at issue here. *Blais v. Islamic Republic of Iran, et al.*, 459 F. Supp. 2d 40 (D.D.C. 2006); *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006). *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163 (D.D.C. 2010); *Akins v. Islamic Republic of Iran*, 332 F. Supp. 3d 1 (D.D.C. 2018) (Howell, C.J.); *Schooley v. Islamic Republic of Iran*, No. 17-cv-1376, 2019 WL 2717888 (D.D.C. June 27, 2019) (Howell, C.J.); *Aceto v. Islamic Republic of Iran*, (No. 19-cv-464), 2020 WL 619925 (Howell, C.J.); *Christie v. Islamic Republic of Iran*, No. 19-cv-1289, 2020 WL 3606273 (D.D.C. July 2, 2020) (Howell, C.J.); *Blank v. Islamic Republic of Iran*, No. 19-cv-3645, 2021 WL 3021450 (D.D.C. July 17, 2021) (Howell, C.J.); *Ackley v. Islamic Republic of Iran*, No. 20-cv-621, 2022 WL 3354720 (D.D.C. Aug. 12, 2022) (Howell, C.J.). Accordingly, defendant the Islamic Republic of Iran is collaterally estopped in this action from denying that it is liable for the acts and actions of Hezbollah in carrying out the terrorist attack at issue here.

15. Defendant Iran sometimes acted through its political subdivision and instrumentality the Iranian Islamic Revolutionary Guard Corps, also known as Pasdaran or IRGC (hereinafter referred to as "IRGC"), which is a military organization and a branch of the Islamic Republic of

Iran. The IRGC has evolved into one of the most powerful organizations in Iran. The IRGC functions as an intelligence organization, both within and outside the country of Iran. The IRGC exerts considerable influence on the government policies of Iran. In addition, the IRGC has become a powerful military instrument for defending the Islamic fundamentalist revolution and Islamic Republic of Iran and is dedicated to the export of Islamic Fundamentalism principles throughout the world through acts of terrorism. The IRGC is the arm through which Iran prepared and oversaw the actions relating to the bomb attack on the Khobar Towers of Dhahran, Saudi Arabia on June 25, 1996. The IRGC, as an agent and political arm of the Islamic Republic of Iran, performed acts within the scope of its agency, each within the meaning of 28 U.S.C. § 1605A, as a conduit for the Islamic Republic of Iran's provision of funds, training and direction to defendant Hezbollah for its terrorist activities in Saudi Arabia that caused the injuries to plaintiffs herein. The IRGC has been found liable by this Court for the same terrorist attack at issue here. Blais v. Islamic Republic of Iran, et al., 459 F. Supp. 2d 40 (D.D.C. 2006); Estate of Heiser v. Islamic Republic of Iran, 466 F. Supp. 2d 229 (D.D.C. 2006).

16. Hezbollah was formed by Iran utilizing IRGC assets as an organization to export Islamic fundamentalism to other Middle Eastern countries and the world through acts of terrorism, including, but not limited to, the actions relating to the bomb attack in the Khobar section of Dhahran, Saudi Arabia on June 25, 1996. Hezbollah, acting as an agent of the Islamic Republic of Iran and of IRGC, performed acts within the scope of its agency, within the meaning of 28 U.S.C. § 1605A, that caused the injuries to the Plaintiffs herein.

III.

STATEMENT OF FACTS

17. Several years before the terrorist attack at issue here, the Islamic Republic of Iran had begun a program of carefully planned acts of terrorism designed to destabilize governments in the Middle East and export principles of Islamic fundamentalism. Its principal agents and political subdivisions and arms in this regard were the Iranian Ministry of Information and Security ("MOIS") and the Pasdaran or Iranian Islamic Revolutionary Guard Corps ("IRGC").

18. In the early 1980's Iran, through MOIS and the IRGC, established Hezbollah in Lebanon as a terrorist organization employing tactics such as kidnapping, torture and murder. The MOIS and the IRGC provided funding, training and equipment to Hezbollah enabling it to pursue and achieve its mission of terrorism. By the early 1990's, the activities of Hezbollah were no longer limited to Lebanon. Its operatives were now operating in a number of countries utilizing the tactics taught to them in Iran and the Bekaa Valley in Lebanon at facilities established, operated and supported by the defendant.

19. In this period, the presence of United States personnel in Saudi Arabia was viewed by the Iranian government as supportive of a Saudi monarchy, which was closely allied with Western governments. In Iran's view, a large-scale terrorist operation designed to kill Americans would expose the corruption of the house of Al-Saud and result in a revolution and the establishment of an Islamic Republic in Saudi Arabia. The Iranian government, acting through MOIS, IRGC, Hezbollah, and Osama bin Laden, began preparations for a bombing of a target associated with American interests. In 1995, the defendant began months of preparation for such an operation. Hezbollah operatives began to scout potential Arabian targets. Small shipments of

explosives were smuggled into Saudi Arabia and stored. An elaborate professional intelligence network was established to carry out the mission.

20. By June of 1996, the bomb components had arrived in Saudi Arabia, including high explosives, incendiary materials, and sophisticated fuses as well as the tools for the bomb assembly. The Defendant selected and approved a target in Dhahran to be detonated by Hezbollah agents.

21. In the evening of June 25, 1996, two men drove a stolen Mercedes Benz tanker truck containing the bomb into the Saudi compound that surrounded the American sector at the al-Khobar military area near Dhahran. They parked the truck 80-100 feet from a building which housed the American personnel. The men drove away in a waiting Chevrolet Caprice, which had also been stolen as a getaway vehicle. A few minutes later, the bomb exploded. The explosion killed dozens of persons including nineteen American servicemen. Hundreds of others were injured. The blast caused structural damage in buildings a quarter mile away.

22. The servicemen and women who were present at the time suffered personal injury and great emotional distress as a result of the terrorist explosion. For most, the psychological wounds continue to this day. Plaintiffs who are close family members suffered great emotional distress when they learned of the attack on their loved ones and in the years afterwards, as well as loss of consortium and solatium damages.

## COUNT I

### ACTION FOR DAMAGES UNDER 28 U.S.C. SECTION 1605A(c)
### By All Plaintiffs

23. Plaintiffs repeat and incorporate by reference the allegations of all prior paragraphs as though fully set forth herein.

24. Defendant provided material support and resources to Hezbollah, within the meaning of 28 U.S.C. Section 1605A(a), which caused, enabled and facilitated the terrorist attack at the Khobar Towers.

25. That terrorist attack, which resulted in nineteen deaths, was an extrajudicial killing within the meaning of Section 1605A, and also caused great personal injury and damage to many others.

26. Plaintiffs herein all suffered severe harm, including emotional distress, mental anguish, pain and suffering, loss of companionship and society, and loss of consortium.

27. The conduct of Iran was criminal in nature, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. Section 1605A(c).

28. Iran is therefore liable for the full amount of plaintiffs' damages and for punitive damages under 28 U.S.C. 1605A(c), jointly and severally.

## COUNT II

### ACTION FOR PERSONAL INJURY (ASSAULT AND BATTERY)
### By Injured Servicemember Plaintiffs

29. Plaintiffs incorporate herein by reference all prior paragraphs as if fully set forth at length.

30. Defendant Iran intended to and did cause great physical harm, maiming, and death to plaintiffs and severe mental anguish and distress to their immediate family members by detonating a powerful explosive device in their immediate proximity.

31. As a result of defendants' actions, Plaintiffs who were servicemen and servicewomen – namely Plaintiffs David E. Thole, Joan M. Thole, Darrin J. Bosin, John D. Brooks, Michael W. Bass, and Juan Antonio Manrique--suffered physical and psychological injuries, and felt an immediate apprehension of harm, upon the detonation of the explosive device.

32. Under 28 U.S.C. Section 1605A(c), and general principles of tort law, Defendant the Islamic Republic of Iran is liable to plaintiffs who suffered personal injuries, physical, emotional, and psychological, and who suffered an immediate apprehension of harm, for their damages including pain and suffering.

33. Defendant the Islamic Republic of Iran is liable to plaintiffs because it controlled and acted in concert with Hizballah, and provided material support and assistance to Hizballah, in sponsoring its terrorist activities in Saudi Arabia.

34. WHEREFORE, Plaintiffs David E. Thole, Joan M. Thole, Darrin J. Bosin, John D. Brooks, Michael W. Bass, and Juan Antonio Manrique demand that judgment be entered against Defendant for damages to compensate them for their injuries, medical expenses, economic losses, and pain and suffering, in an amount to be determined at trial.

## COUNT III

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### By All Plaintiffs

(28 USC Sections 1605A and 1606)

35. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length.

36. The act of terrorism in detonating a bomb outside of the Khobar Towers complex in Dhahran, Saudi Arabia, with the intent to kill and maim Americans and which in fact did kill and

severely injure Americans, including Plaintiffs' family members, constituted extreme and outrageous conduct on the part of defendant Iran and Hizballah members and agents. The extensive planning and preparation which went into the attack further underscores the malicious and heinous nature of the terrorism involved.

37. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hizballah members, whose acts were funded and directed by Iran and by the IRGC, all Plaintiffs herein suffered severe emotional distress, including extreme mental anguish, emotional distress, and pain and suffering.

38. Defendant is directly and vicariously responsible for Hizballah's actions because it funded, trained, and directed Hizballah and acted in concert with Hizballah in sponsoring the terrorist attack on Khobar Towers. It is responsible under state and federal substantive law as made applicable by 28 U.S.C. Section 1606 as well as under 28 U.S.C. Section 1605A.

39. All Plaintiffs were intended and directly affected victims of defendant's plan to intentionally inflict emotional distress on the victims of their terrorist acts, and are entitled to compensation under applicable law.

40. For the reasons stated above, Defendant is liable to all Plaintiffs for intentional infliction of emotional distress.

WHEREFORE, Plaintiffs demand that judgment be entered against Defendant in an amount to be determined at trial.

## COUNT IV

## **SOLATIUM, PAIN AND SUFFERING AND LOSS OF CONSORTIUM**

### By Immediate Family Members

### 28 USC SECTION 1605A(c)

41. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth at length.

42. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hizbollah members, whose acts were funded, directed and materially supported and assisted by defendant Iran and by the IRGC, Plaintiffs who were immediate family members of the servicemen injured in the Khobar Towers attack were deprived of the assistance, society and companionship of their family members for extended periods of time. Plaintiffs suffered severe emotional distress and mental anguish as a result of the injuries to their loved ones and as a result of being deprived of their companionship. They are still deprived of the assistance, society, and companionship of the healthy and vibrant young men and women they knew and loved prior to the terrorist attack described above. This has caused them to suffer, among other things, extreme mental anguish and emotional and physical pain and suffering.

43. As a result, plaintiffs David E. Thole, Joan M. Thole, Gail Ann Balcom, Maria Hughes, Alred Anthony, and Cynthia M. Anthony are entitled to damages for solatium and/or loss of consortium under applicable law.

44. For these reasons, Defendant is liable to plaintiffs in an amount to be determined at trial.

17

## Count V

## **PUNITIVE DAMAGES**

## 28 USC Section 1605A (c)

45. Plaintiffs incorporate by reference all prior paragraphs above as if fully set forth at length.

46. The actions of defendant acting in concert with IRGC and Hizballah to carry out their unlawful objectives were malicious and willful, wanton and reckless in their disregard for human life and limb, and caused severe injuries to Plaintiffs and untold pain and suffering to those Plaintiffs who were the immediate family members and loved ones of the injured servicemen and servicewomen.

47. The actions of Hizballah were undertaken at such time as they were operating for and in the service of Defendant Iran and the IRGC, and in concert with them, and which are therefore both vicariously and directly liable to plaintiffs.

48. For the reasons stated above, Defendant Iran is liable to plaintiffs for punitive damages. Plaintiffs demand an award of punitive damages against defendant in an amount to be determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant judgment in their favor and against Defendant Iran on Counts I through V, and grant Plaintiffs:

A. Compensatory damages in favor of Plaintiffs as against Defendant in amounts to be determined by the Court;

B. Punitive Damages in favor of Plaintiffs as against defendant in an amount to be determined by the Court;

C. Prejudgment interest from the date of the attack through the date a judgment and order is entered;

C. Reasonable costs and expenses;

D. Reasonable attorneys' fees; and

E. Such other and further relief as the Court may determine to be just and equitable in the circumstances.

Respectfully submitted,

/s/ Paul G. Gaston
Paul G. Gaston (DC Bar # 290833)
LAW OFFICES OF PAUL G. GASTON
1101 Connecticut Avenue, NW, Suite 450
Washington DC 20036
202-296-5856
*paul@gastonlawoffice.com*

*Attorney for Plaintiffs*

DATED: March 24, 2023